Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| PCI DE LLC; PCI PR LLC; BETTER PUERTO RICO, LLC<br><br>Apelado<br><br>v.<br><br>PAULSON & CO., INC.; F40, LLC; V12 LAND LLC; RAFAEL CEDEÑO PAULSON<br><br>Apelante | KLAN202400360 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2023CV11734 (904)<br><br>Sobre: Interdicto Posesorio |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

Comparece ante este tribunal apelativo Paulson & Co., F40, LLC, V12 Land LLC y Rafael Cedeño Paulson (en conjunto, la parte apelante) mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 3 de abril de 2024, notificada el mismo día. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la demanda instada por PCI DE LLC, PCI PR LLC y Better Puerto Rico LLC (en conjunto, la parte apelada).

Por los fundamentos que expondremos a continuación, procede confirmar el dictamen apelado.

### I.

El 20 de diciembre de 2023, la parte apelada instó una *Demanda Jurada sobre Interdicto Posesorio* en contra de Paulson & Co., F40, LLC, V12 Land LLC y Rafael Cedeño Paulson.[1] En esta,

---
[1] La misma se acompañó con varios anejos.

adujo que en el 2022 Fahad Ghaffar y John Paulson, a través de los entes corporativos incluidos como partes, incursionaron en la venta al detal de automóviles y acordaron comprar los concesionarios que operaba Gómez Hermanos Kennedy ("Project Race") y Auto Grupo ("Project AG"). Alegó que así crearon el conglomerado United Collection. Se indicó que uno de los acuerdos de colaboración fue el uso compartido de la zona franca (*Free Trade Zone, (*FTZ, siglas en inglés) perteneciente a V12 Land LLC. En este aspecto, se expresó que: "Dicha zona es vital para la operación de concesionarios con gran volumen de negocio, pues permite que estos ubiquen sus autos recién importados en dicha zona, sin tener que pagar arbitrios al Gobierno de Puerto Rico hasta tanto el auto es retirado de la zona para ponerlo en venta al detal."[2] Se especificó, además, que en dicho lugar se almacenan los autos de PCI DE LLC y de F40, LLC y que ambas empresas tienen acuerdos verbales con V12 Land LLC <u>para utilizar el área y beneficiarse de las economías</u> por ubicar allí los autos. Por tanto, por el pasado año PCI DE LLC ha tenido <u>la posesión y disfrute del lado izquierdo de la zona franca</u> y F40, LLC en el lado derecho.

También arguyó que Paulson & Co., Inc. y las demás empresas codemandadas (la parte apelante) han realizado una serie de actos para interferir *a la fuerza* con los derechos de uso y disfrute de PCI DE LLC. Sobre esto, se agregó que estos sacaron a la fuerza los autos de la marca Alfa Romeo del vestíbulo asignado y acordado para exhibirlos y amenazaron con sacar, de igual manera, de la zona franca, sobre 250 autos que PCI DE LLC mantiene en el lugar. Asimismo, se les negó el acceso para ubicar otros autos importados que serían colocados en el área. Por último, mencionó que si la parte apelante logra el objetivo de sacar los 250 autos que están situados

---

[2] Véase, Apéndice del Recurso, a la pág. 006.

en la zona franca, tendrán que pagar aproximadamente $2,000,000 en arbitrios. En virtud de lo anterior, apuntaló que la demanda cumple con los requisitos para que se emita un interdicto posesorio.

Considerada la naturaleza extraordinaria de la solicitud de interdicto posesorio, presentada el 21 de diciembre de 2023, notificada el mismo día, el TPI emitió una *Orden de Citación a Vista* conforme a los Artículos 690 a 695 del Código de Enjuiciamiento Civil, 32 LPRA Secs. 3561 a 3566. Al otro día, la parte apelada presentó una *Moción urgente para salvaguardar la jurisdicción del tribunal* indicando que la parte apelante le impidió acceso a la zona para ubicar 27 vehículos que estaban en el puerto. En la misma fecha, 22 de diciembre, el foro *a quo* dictó una Orden para disponer que se mantiene el *status quo* de la relación habida entre las partes referente a la posesión de la zona franca, hasta que se celebre el juicio en su fondo. Enfatizó que "[n]o deberá haber ningún tipo de intervención con el libre acceso a dicha área" y realizó advertencias por cualquier incumplimiento con lo allí ordenado. La parte apelante presentó una reconsideración, la cual fue declarada No Ha Lugar el 26 de diciembre de 2023.[3]

El 3 de enero de 2024, la parte apelante presentó ante el TPI una *Notificación de Traslado y Solicitud de Paralización de los Procedimientos* informando que "[e]n el día de hoy, ..., los comparecientes presentaron un *Notice of Removal* ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico ...".[4] El 5 de enero, el foro primario emitió una *Sentencia* desestimando sin perjuicio la acción y ordenó la paralización de los procedimientos. No obstante, el 12 de enero, la parte apelada presentó una *Urgente Moción sobre "Remand"* expresando que en esa fecha el Tribunal de Distrito Federal rechazó *motu proprio* tener

---

[3] *Íd.*, a la pág. 106. Notificada el mismo día.
[4] *Íd.*, a las págs. 178-179.

jurisdicción sobre el caso y lo devolvió al TPI para la continuación de los procedimientos.[5] Incluyó como anejo *Memorandum and Order,* así como el *Judgment* del caso Civil No. 24-1001 (RAM). Por lo que, el TPI emitió una Orden manteniendo la vista para el 17 de enero de 2024 según previamente pautada.

Así las cosas, se llevó a cabo la vista evidenciaria los días 17 y 30 de enero. Surge de las Minutas que acudieron a dicha vista el Sr. Fahad Ghaffar, representante de la parte demandante; el Sr. Miguel López Rivera, Chief Executive Officer de PCI PR LLC; el Sr. Víctor Gómez Horta, presidente de la compañía Gómez y Hermanos Kennedy LLC y la Lcda. María Ligia Gigaldez Rodríguez, abogada *in house* de Compañía demandada.[6] También comparecieron los representantes legales de las partes; así como un intérprete para el Sr. Fahad Ghaffar. De la Minuta del 17 de enero surge, además, que el TPI hizo constar que lo que tiene ante sí es un interdicto posesorio y no impedirá a la parte demandada (la parte aquí apelante) que radique un pleito para dilucidar la titularidad del inmueble.[7] Asimismo, el foro apelado expresó que únicamente resolverá si la parte demandante (la parte aquí apelada) tenía o no la posesión.[8]

Terminada la vista evidenciaria y aquilatada la prueba documental; así como la prueba testifical vertida, el TPI dictó la *Sentencia* apelada. En la misma, esbozó quince (15) determinaciones de hechos a base de los cuales declaró *Ha Lugar* a la demanda. En su consecuencia, ordenó a la parte apelante al cese y desista de continuar perturbando e inquietando la posesión y tenencia que sobre la zona franca (FTZ) la parte apelada ostenta. El foro *a quo* razonó que:[9]

---

[5] *Íd.*, a la pág. 200.
[6] *Íd.*, a las págs. 219 y 620.
[7] *Íd.*, a la pág. 219. Véase, Transcripción de la Prueba Oral (TPO), a la pág. 290, líneas 5-6.
[8] *Íd.*, a la pág. 220.
[9] Véase, Apéndice del Recurso, a las págs. 638-639.

### A. Vestíbulo del concesionario

[...] Además, surge del testimonio del Sr. Víctor Gómez, el cual encontramos creíble, que ambas partes habían tenido conversaciones y habían acordado remover todos los bienes de los demandantes del vestíbulo de la Demandada. ... Finalmente, no existe prueba de quién removió los automóviles del vestíbulo del concesionario y, al existir una posibilidad de que fueran empleados del Demandante, no podemos establecer que hubo una perturbación de la posesión del Demandante.

Así las cosas, y en concordancia con el derecho expuesto, este Tribunal no puede concluir que la parte demandante ha sido perturbada en la posesión o tenencia de dicha propiedad por actos, llevados a cabo por la parte [demandada] o por otra persona por orden de esta.

### B. Estacionamiento en la zona franca (FTZ)

La controversia expuesta ante este Tribunal recae en establecer si hay o hubo posesión sobre el inmueble que es utilizado como zona franca para el almacenamiento de vehículos de motor. Se desprende de los hechos incontrovertibles que, tanto los vehículos de la parte demandante como de la parte demandada, han estado dentro de la zona franca por el pasado año. Ahora bien, al examinar la prueba, podemos concluir que la parte demandante tuvo posesión natural o civil en algún momento sobre una parte de dicho inmueble.

[...] Por lo tanto, la posesión absoluta sobre el espacio específico en el cual se posicionaban los autos en la zona franca siempre la ha tenido F40 y los Demandados. Los Demandantes no tienen control alguno sobre el área. No obstante, mientras el Sr. Fahad Ghaffar era CEO de F40 y PCI, se estableció que ambas entidades ostentarían la posesión compartida del inmueble FTZ.

A pesar de lo anterior, no existe duda en cuanto a que los autos de la parte Demandante se estaban almacenando en la zona franca. Estos autos se almacenaban dentro del año que requiere la causa de acción de interdicto posesorio. Tampoco existe controversia en cuanto al hecho de que la parte Demandada le envió una carta a los Demandantes amenazando con remover los autos sin el permiso de los Demandantes. Esto nos parece que es una perturbación en cuanto a la posesión del espacio en la zona franca. Adicionalmente, se amenazó con no permitir la entrada de los autos de los Demandantes a la zona franca, aun cuando estos llevaban almacenando sus autos en ese espacio dentro del año anterior a la carta. [...]

La determinación sobre el derecho al uso de la zona franca es un asunto que deberá determinarse mediante un procedimiento ordinario y no a través de actos de perturbación como la remoción de verjas y/o reubicación de vehículos de motor en el espacio previamente acordado.

Inconforme, la parte apelada acude a este foro apelativo, mediante el recurso de apelación de epígrafe, imputándole al TPI haber incurrido en los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL EMITIR UN INTERDICTO POSESORIO A BASE DE DETERMINACIONES DE HECHO[S] QUE NO ESTÁN SUSTENTADAS POR LA PRUEBA.

> SEGUNDO ERROR: ERRÓ EL TPI AL EMITIR UN INTERDICTO POSESORIO CUANDO, CONFORME A LAS ADMISIONES DE LOS PROPIOS APELADOS, ESTOS NO TENÍAN (NI TIENEN) POSESIÓN SOBRE INMUEBLE ALGUNO.

> TERCER ERROR: ERRÓ EL TPI AL EMITIR UN INTERDICTO POSESORIO CUANDO, CONFORME A LAS ADMISIONES DE LOS PROPIOS APELADOS, NO OCURRIÓ ACTO DE "PERTURBACIÓN" ALGUNA, SINO UNA MERA DIVISIÓN DE OPERACIONES.

> CUARTO ERROR: ERRÓ EL TPI AL APLICAR UN ESTÁNDAR PROBATORIO ("*SCINTILLA* DE LA PRUEBA") QUE ERA TOTALMENTE INAPLICABLE EN LA ETAPA DE LOS PROCEDIMIENTOS EN QUE SE DICTÓ LA *SENTENCIA*.

> QUINTO ERROR: ERRÓ EL TPI AL EMITIR UN INTERDICTO POSESORIO, POR SER ELLO INCOMPATIBLE CON LO RESUELTO POR EL TRIBUNAL SUPREMO EN *LILLY DEL CARIBE V. MUNICIPIO DE CAROLINA*, 210 D.P.R. 306 (2022), Y CON EL ANDAMIAJE LEGAL QUE GOBIERNA LOS TERRENOS REGULADOS A NIVEL FEDERAL, COMO LAS FTZs.

El 15 de abril de 2024, la parte apelante instó una moción solicitando auxilio de jurisdicción para paralizar una vista desacato, la cual declaramos *No Ha Lugar*. El 9 de mayo, emitimos una *Resolución*, en la que, en respuesta al escrito presentado por la parte apelada, le ordenamos a la parte apelante presentar la Transcripción de la Prueba Oral (TPO) íntegramente y concedimos término para los subsiguientes alegatos suplementario y en oposición.

En respuesta a la *Moción en Cumplimiento de Resolución* instada por la parte apelante, el 7 de junio de 2024 emitimos una *Resolución* dándonos por cumplidos respecto a la TPO y la tomamos como la estipulada entre las partes. También le concedimos a la parte apelada, el término de treinta (30) días para presentar su alegato en oposición, toda vez que la parte apelante indicó que no

presentará un alegato suplementario. El 10 de julio, la parte apelada cumplió con lo ordenado.[10] Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados las comparecencias de las partes, el expediente apelativo y la TPO; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Interdicto posesorio**

El Artículo 703 del Código Civil de 2020, 31 LPRA sec. 7821, dispone que la "[p]osesión es la tenencia de una cosa o el disfrute de un derecho por una persona." Esta es conocida como la posesión natural. A su vez, la posesión civil es esa misma tenencia o disfrute, unidos a la intención de haber la cosa o derecho como suyos. Artículo 704, Código Civil de 2020, 31 LPRA sec. 7822. Así, "[l]a posesión de los bienes puede tenerse en uno de dos conceptos: (a) en el de dueño; o (b) en el de tenedor, para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona." Artículo 707, Código Civil de 2020, 31 LPRA sec. 7825.

De otra parte, el Artículo 690 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3561, dispone lo siguiente:

> Se concederá un injunction para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos **que manifiesten la intención de inquietarle o despojarle**, o cuando haya sido ya despojada de dicha posesión o tenencia. [Énfasis nuestro]

A su vez, el Artículo 691 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3562, establece que:

> La demanda será redactada y jurada de acuerdo con las disposiciones del Código de Enjuiciamiento Civil, y hará constar:
> (1) Que el demandante, dentro del año precedente de la presentación de la demanda, estaba en la posesión real

---

[10] Acompañó moción intitulada *Solicitud de Autorización para presentar alegato en exceso de páginas,* la cual declaramos Ha Lugar.

de la propiedad que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla.
(2) Que ha sido perturbado o despojado de dicha posesión o tenencia.
Deberá también describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste.

En *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951 (2009), nuestro Tribunal Supremo tuvo ocasión de repasar la figura del interdicto posesorio. Al examinar los requisitos consagrados en el Artículo 691 del Código de Enjuiciamiento Civil, *supra*, nuestro máximo foro expresó que estos no son meras formalidades, sino que por el contrario son presupuestos necesarios para lograr la protección interdictal. *Íd.*, a la pág. 961. En una demanda por interdicto posesorio el reclamante debe aseverar y establecer que dentro del año anterior estaba (1) en posesión del inmueble, si interesa recuperarlo; o (2) que estaba y está en posesión del inmueble, si lo intenta retener. *Íd.* Tiene que dejar constar que ha sido perturbado o despojado en la posesión, detallando los actos constitutivos de esta, así como que estos actos fueron realizados por el demandado o alguien a su orden. *Íd.* Asimismo, es necesario que la demanda describa la finca objeto del interdicto, de modo tal que se sepa dónde está y pueda ser identificada al ejecutar la sentencia. *Íd.*, a la pág. 962.

Por último, dispone el Artículo 692 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3563, que "[e]l tribunal fijará fecha para el juicio en dicha demanda, el cual tendrá lugar dentro de los quince (15) días subsiguientes, debiéndose emplazar al demandado ocho (8) días antes, cuando menos, al fijado para el juicio". Respecto a esto, es preciso señalar que el interdicto posesorio es una acción de naturaleza sumaria, **donde solo se discute la posesión del inmueble, sin entrarse en cuestiones relativas al título**. J.R. Vélez Torres, *Los derechos reales*, San Juan,

Puerto Rico, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1995, T. II, a la pág. 133. Es preciso advertir, además, que las sentencias que conceden un interdicto posesorio no constituyen cosa juzgada, pues estas no tienen el efecto de adjudicar la titularidad del bien inmueble controvertido. En *Miranda Cruz y otros v. S.L.G. Ritch,* supra, a las págs. 967-968.

**La apreciación de la prueba y el estándar de revisión apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

De otra parte, cuando se evalúa la prueba documental, el foro apelativo se encuentra en la misma posición que el foro de instancia. Al tener ante sí los mismos documentos que fueron considerados por el juzgador de instancia, no hay emociones o comportamientos que el juzgador apelativo esté dejando fuera de la ecuación. "Somos conscientes, naturalmente, que en relación con la evaluación de prueba documental este tribunal está en idéntica situación que los tribunales de instancia". *Trinidad v. Chade,* 153 DPR 280, 292 (2001), citando a *Díaz García v. Aponte Aponte,* 125 DPR 1 (1989), y a *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161 (1989).

**III.**

La parte apelante, en esencia, planteó que el TPI erró al emitir un interdicto posesorio en **ausencia total de prueba**. Asimismo, en el quinto, y último error, arguyó que, conforme a la doctrina establecida por nuestro Tribunal Supremo en *Lilly del Caribe v. Mun. de Carolina,* 210 DPR 306 (2022), y el andamiaje legal federal, el foro primario **estaba impedido** de expedir el interdicto posesorio sobre un terreno cuya posesión y acceso están altamente regulados por el gobierno federal.

De entrada, atendemos este último señalamiento de error por argumentarse el elemento jurisdiccional del tribunal para adjudicar la controversia. La parte apelante enfatizó que, conforme a lo resuelto en *Lilly del Caribe v. Mun. de Carolina*, supra, el foro apelado estaba impedido de considerar el asunto. Allí, el más alto foro decretó que la *Doctrina del Campo Ocupado* veda la facultad de los municipios para imponer requisitos adicionales a una empresa que opera en la Zona de Comercio Exterior y pretenda acogerse a los beneficios de la exención contributiva a base de la *Foreign Trade Zones Act*. El Tribunal Supremo reconoció que el Gobierno Federal ha creado las Zonas de Comercio Exterior y que se ha reservado para sí la facultad exclusiva para regular su funcionamiento, no obstante, en el caso de autos la parte apelante reconoce que el "grantee" de la zona es el *Departamento de Desarrollo Económico y Comercio de Puerto Rico* con quien F40 formalizó un acuerdo de operación para la zona franca. En dicho acuerdo, claramente se dispone que el mismo está sujeto a las leyes aplicables de Puerto Rico. Además, la controversia ante la consideración del foro apelado no estaba relacionada a la imposición de requisitos adicionales a F40, quien es la empresa que opera en el FTZ. Como ha dictaminado el Tribunal Supremo, en el interdicto posesorio solo se atiende el hecho de la posesión de una propiedad inmueble, no el derecho a su

posesión. *Miranda Cruz y otros v. S.L.G. Ritch*, supra. Por tanto, el TPI estaba facultado para considerar la causa de acción instada por la parte apelada.

De igual forma, apuntalamos que la causa de acción de epígrafe no le es aplicable la *Doctrina del Campo Ocupado*. Conforme surge del trámite procesal antes consignado, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico rechazó *motu proprio* tener jurisdicción sobre el caso y lo devolvió al tribunal estatal para la continuación de los procedimientos, a tenor con la normativa del derecho de Puerto Rico.

Así, aclarado el aspecto jurisdiccional pasamos a considerar los restantes errores los cuales, como adelantamos, están relacionados con la prueba presentada. Precisamos nuevamente que el interdicto posesorio es una acción de naturaleza sumaria, donde solo se discute la posesión del inmueble, sin entrar a dilucidar los asuntos relativos a la titularidad. Por otro lado, es un proceso expedito que requiere una pronta adjudicación, sin someter a las partes a los rigores de un descubrimiento de prueba y el intercambio de mociones. A fin de cuentas, el propósito de este remedio es evitar que las personas tomen la justicia en sus propias manos. Cuando el tribunal tiene ante sí los hechos relevantes, como en el caso de epígrafe, no tiene por qué retardar su decisión.

Por tanto, en el presente caso, se demostró a cabalidad las alegaciones de la demanda, es decir, la parte apelada estableció que dentro del año anterior estaba en posesión del inmueble y que fue perturbado en su posesión. De igual manera, describió claramente la finca objeto del interdicto y el lugar específico donde están ubicados, en el predio de terreno, los 250 autos de su propiedad. El foro apelado consignó como un hecho probado que la parte apelante realizó actos de perturbación en el área de la Zona franca (FTZ), al remover y reubicar verjas en su interior con el objetivo de remover

250 vehículos de motor pertenecientes a la parte apelada.[11] También, mediante los testimonios vertidos, quedó claramente demostrado que la posesión de la zona es compartida por acuerdo habido entre PCI y F40.[12] El Sr. Miguel López Rivera es el CEO de PCI PR LL,[13] y declaró (utilizando el Exhibit II)[14] que PCI utiliza el lado izquierdo del solar (el de mayor cabida) y F40 utiliza el derecho.[15] A su vez, de una lectura de la TPO surge que desde el 16 de noviembre de 2022 PCI utilizaba el predio de terreno en una porción mayor a la de F40,[16] y que este fue perturbado en su posesión al recibir un correo electrónico (Exhibit 1- estipulado) donde se le indicaba que los carros serían removidos para el 22 de diciembre de 2023.[17] De hecho, el Sr. Víctor M. Gómez Orta declaró que él tomó la decisión de sacar los 250 carros de PCI en esa fecha y a cobrarle a esta $40 mensual por cada carro almacenado, una vez comienza a trabajar como Presidente de F40.[18] Este especificó que el Sr. Fahad Ghaffar le indicó que no estaba de acuerdo con estas decisiones.[19] En consecuencia, no encontramos error manifiesto ni prejuicio en la apreciación y evaluación de la prueba. Además, como bien argumentara la parte apelada en su escrito en oposición, no hay duda de que se configuraron los elementos para conceder el interdicto posesorio, como bien razonó el TPI.

En fin, resolvemos que los errores señalados no fueron cometidos por el foro primario.

**IV.**

Por los fundamentos antes expresados se confirma la *Sentencia* apelada.

---

[11] Véase, determinación de hechos número 14.
[12] Véase, TPO del 17 de enero de 2024 a la pág. 170, 177-179.
[13] *Íd.*, a la pág. 18.
[14] Véase, Apéndice del Recurso, a la pág. 494.
[15] Véase, TPO del 17 de enero de 2024, a las págs. 34-35.
[16] *Íd.*, a las págs. 96 y 120; TPO del 31 de enero de 2024, a la pág. 20.
[17] Véase, TPO del 17 de enero de 2024, a las págs. 34, 39, 122, 125 y 192; y TPO del 31 de enero de 2024, a las págs. 59-60.
[18] Véase, TPO del 31 de enero de 2024, a las págs. 12, 20, 51-53 y 58.
[19] *Íd.*, a las págs. 52-53.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones